233 N.J. Super. 101 (1989)
558 A.2d 47
CYNTHIA CIAMBRONE, GENERAL ADMINISTRATRIX OF THE ESTATE OF GLORIA HICKMAN, AND CYNTHIA CIAMBRONE, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF GLORIA HICKMAN, PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY DEPARTMENT OF TRANSPORTATION, DEFENDANT-RESPONDENT, AND RICHARD A. WRIGHT, III, ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 11, 1989.
Decided May 11, 1989.
*102 Before Judges LONG, MUIR, JR. and KEEFE.
Robert W. Ruggieri argued the cause on behalf of appellant (Cassidy, Foss & San Filippo, attorneys; Harold J. Cassidy and Robert W. Ruggieri, on the brief).
Madeleine W. Mansier, Deputy Attorney General, argued the cause on behalf of respondent (Peter N. Perretti, Jr., Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Madeleine W. Mansier, on the brief).
The opinion of the court was delivered by MUIR, Jr., J.A.D.
This appeal requires us to determine whether the New Jersey Department of Transportation (DOT) is immune from liability under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., with respect to the setting and timing of a traffic light as part of the original improvement of an intersection within the meaning of the plan or design immunity provisions of N.J.S.A. 59:4-6. We conclude that it is. Consequently, we affirm the order of summary judgment under appeal which dismissed plaintiff's claim against the DOT.
The facts giving rise to the appeal are undisputed. On November 26, 1985, at approximately 5:16 p.m., plaintiff's decedent *103 Gloria R. Hickman, a pedestrian, was crossing State Highway 36 (Route 36) at the intersection of Appleton Road in Leonardo, Monmouth County. At that point, Route 36 is a four-lane divided highway with two eastbound and two westbound lanes separated by a center barrier. Appleton Road runs north-south and intersects Route 36 at a 90 degree angle. The intersection is controlled by a traffic light.
Mrs. Hickman had crossed the two eastbound lanes of Route 36 and was standing near the barrier on the west side of the intersection waiting for the light to change so that she could cross the two westbound lanes. Meanwhile, Wright was driving a 1977 Datsun 280Z on Route 36 West in the right lane. As Wright approached the Appleton Road intersection behind another vehicle, the traffic light turned from green to amber. As the vehicle in front of him braked, Wright switched to the left lane and proceeded through the intersection.
As Wright made this maneuver, Mrs. Hickman stepped off the center barrier into the intersection in front of Wright's vehicle. Unable to stop, Wright's vehicle struck Mrs. Hickman. She was thrown 64 feet in the air before landing in the right lane of Route 36 West. Mrs. Hickman was transported to Riverview Medical Center, where she was pronounced dead on arrival. Three witnesses stated Wright had disregarded the traffic signal and that his speed appeared to be excessive.
The DOT installed the traffic signal in March 1967. At that time it set the timing sequence in operation the day of the accident. The DOT officials set the timing sequence in accordance with criteria of the United States Department of Transportation's Manual on Uniform Traffic Control Devices for Streets and Highways, which the New Jersey DOT adopted as the standard for design and use of traffic signals in this State. See N.J.A.C. 16:27-1. That timing sequence provides for a two second all red interval for the Route 36 traffic so the Appleton Road traffic can clear the intersection before the Route 36 traffic proceeds. It does not, however, provide a similar all red *104 interval before turning green for the Appleton Road traffic. Thus, the instant the light turns red for the Route 36 traffic, it turns green for the Appleton Road traffic.
There is no dispute that the traffic signal worked properly at the time of the accident. Rather, plaintiff predicates DOT's liability on the report of her expert, which indicated that Hickman's death might have been avoided if DOT had provided for a two second all red interval before the traffic signal turned green to permit the Appleton Road traffic to proceed into or across Route 36. Plaintiff's expert asserts the traffic signal in question has "never been adjusted to provide a safe interval."
Plaintiff contends that the trial court erred as a matter of law in ruling that the plan or design immunity provisions of N.J.S.A. 59:4-6 shield DOT from liability for its alleged negligence regarding the timing sequence of the traffic signal at the intersection of Route 36 and Appleton Road. Plaintiff argues that decisions as to the timing sequence of traffic signs represent an operational or ministerial action, not planning-level activity, and therefore immunity does not attach. In the alternative, plaintiff suggests that DOT's failure to follow the requisite approval procedures preclude immunity in this case. DOT maintains that the design immunity provisions of N.J.S.A. 59:4-6 are applicable to the timing sequence of a traffic signal. Moreover, DOT asserts that the timing sequence of the signal in question was properly approved. The trial judge agreed with the DOT's position, and so do we.
N.J.S.A. 59:4-6 immunizes a public entity from liability for an injury caused by the plan or design of public property "either in its original design or any improvement thereto," where the plan or design has been approved in advance of construction by a public employee exercising discretionary authority to give such approval.[1]Costa v. Josey, 83 N.J. 49, 53 (1980). In addition, *105 the public entity is immune if the Legislature or appropriate governing body grants the requisite advance approval, or if the plan or design is prepared in conformance with previously approved standards. See N.J.S.A. 59:4-6a.
Under the Tort Claims Act, the burden is on the public entity to plead and prove its immunity and "to succeed on a motion for summary judgment, the entity must `come forward with proof of a nature and character [that] would exclude any genuine dispute of fact * * *.'" Kolitch v. Lindendahl, 100 N.J. 485, 497 (1985) (quoting Ellison v. Housing Auth. of South Amboy, 162 N.J. Super. 347, 351 (App. Div. 1978)). "However, once a moving party has met that burden, summary judgment is warranted and, indeed, desirable as a matter of judicial economy." Id. (citing Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954)).
To succeed under this standard, the DOT had to demonstrate (1) that its decisions with respect to the timing sequence of the traffic light were made as part of the plan or design of public property and (2) that the plan or design was approved in advance of construction by a public employee exercising discretionary authority to give such approval. See N.J.S.A. 59:4-6a. The record indicates DOT succeeded.
With respect to whether the timing sequence of the traffic signal involved planning or design, the DOT presented a Certification of P. Norman Deitch, Chief of the DOT Bureau of Traffic and Engineering Safety Programs. That certification, in pertinent part, recites:

*106 3. This Bureau is responsible for designing and approving all timing sequences for traffic signals on State roads.
4. Every timing sequence is designed by an engineer within this bureau based on an engineering study involving the consideration of factors such as the volume of traffic, vehicle approach speed, and configuration of the given intersection.
5. Designing of the timing sequences requires the exercise of judgment of the engineer, based on his education, training and experience in the design of traffic control devices, as well as on personal knowledge of the intersection.
Attached to the certification is a letter from George Kerwin, DOT Chief of the Bureau of Electrical Engineering, to plaintiff's counsel dated January 14, 1986, which reads:
This installation is known as a fixed-time traffic signal. Our records indicate that this signal was inspected on November 24 and December 27, 1985, by employees of the Department of Transportation of our Wall Township Field Office. On both occasions the signal was found to be operating in accordance with the timing schedule shown below. [Timing schedule omitted].
* * * * * * * *
The signal was installed by personnel of the Department of Transportation and was put into operation in March of 1967.... The physical layout of the traffic signal on November 26, 1985, was, as is generally indicated on New Jersey Department of Transportation asbuilt print, identified as Control Section Number 1315125, revision date of May 30, 1974. A signal face is represented by a filled-in arrow symbol which points in the direction of the traffic it is controlling and is identified by number. The signal face in the timing schedule refers to this drawing.
The Deitch certification and Kerwin letter demonstrate that DOT's decisions with respect to the timing sequence of the traffic light were made as part of the plan or design of the intersection.
Moreover, undisputed evidence discloses that the planning of the timing sequence of the traffic signal was approved in advance of construction by a public employee exercising discretionary authority to give such approval. In particular, the Deitch certification outlines the following procedures:
6. After a timing sequence is designed by an engineer, that design is reviewed by the Project Engineer, and if found acceptable and in accordance with Departmental standards, is approved by the Project Engineer and forwarded to the Supervising Engineer.

*107 7. The Supervising Engineer then reviews the design, and if he finds it acceptable and in accordance with Departmental standards, he then finally approves the design and forwards it, in the form of a "directive", to the Bureau of Electrical Engineering for processing and forwarding for ultimate implementation.
8. The Supervising Engineer of the Bureau, in addition to myself as Chief of the Bureau, is charged with the authority to finally approve or reject the design of the timing sequences.
9. Approving the design of a timing sequence requires the exercise of the judgment of the engineer based on his education, training and experience in the design of traffic control devices.
A certification of George Kerwin also provides:
The timing directive ..., and the plan and design of the timing sequence contained in that directive, was formulated and approved in advance of implementation by the appropriate employee of the D.O.T. Bureau of Traffic Engineering. Departmental policy and procedures require that such directives and timing sequences be formulated and approved by that office in advance of implementation.
Based on this proof, DOT has satisfied its burden of demonstrating its immunity here through proof of a nature and character that would exclude any genuine dispute of fact. See Kolitch v. Lindendahl, supra, 100 N.J. at 497.
Nonetheless, plaintiff suggests that DOT's implementation of a timing sequence for a traffic light involves maintenance or operational activities, not "original construction" or "any improvement thereto," and thus N.J.S.A. 59:4-6 does not confer immunity upon DOT in this case. Plaintiff posits that while a public entity's decision to install a traffic light at an intersection is clearly a planning-level or design decision, its decision on the timing and sequence of that light is one of operational execution and not entitled to immunity. In support, plaintiff relies on New Jersey Supreme Court decisions which distinguish between planning-level or design decision, which are generally entitled to immunity, and operational or ministerial actions, which are not. See, e.g., Kolitch v. Lindendahl, supra, 100 N.J. at 495; Costa v. Josey, 83 N.J. 49, 53 (1980). We disagree with plaintiff's reasoning and conclude the timing sequence constituted a planning-level or design decision.
*108 The Tort Claims Act was drafted in 1972 by a task force selected by the Attorney General. Costa v. Josey, 79 N.J. 535, 539 (1979) (Schreiber, J., dissenting), rev'd after rehearing 83 N.J. 49 (1980); see also Rochinsky v. State of N.J. Dept. of Transp., 110 N.J. 399, 404-11 (1988) (for comprehensive overview of Tort Claims Act and reasons for its enactment). Contemporaneously, the task force issued a thorough report with substantial commentary. See Report of the Attorney General's Task Force on Sovereign Immunity (1972) (Report). The Supreme Court has referred to the commentary in the Report on numerous occasions for guidance in statutory construction. See, e.g., Rochinsky v. State of N.J. Dept. of Transp., 110 N.J. 399, 407 n. 3 (1988); Birchwood Lakes Colony Club v. Medford Lakes, 90 N.J. 582, 594 n. 4 (1982); Costa v. Josey, 83 N.J. 49, 61 n. 1 (1980) (Clifford, J., dissenting). These comments "have the precedential value and weight of Legislative history." Rochinsky v. State of N.J. Dept. of Transp., supra, 110 N.J. at 407 n. 3.
As an example of the kind of plan or design as to which a public entity is immune from liability under N.J.S.A. 59:4-6, the commentary in the Report cited a particular New York decision, Weiss v. Fote, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960). See, Report, supra, comment to § 59:4-6, at 222-23. Like the matter before this court, that case involved the alleged negligence of a public entity based upon the planning or design of a traffic signal "clearance interval." See Weiss v. Fote, supra, 200 N.Y.S.2d at 415, 167 N.E.2d at 67.[2] This reference indicates the drafters of the Tort Claims Act considered a public *109 entity's decision regarding the timing sequence of a traffic signal to epitomize the kind of activity to which immunity should attach and not, as plaintiff suggests, to be merely an operational decision. See Report, supra, comment to § 59:4-6, at 222-23; see also Costa v. Josey, supra, 79 N.J. at 541 (Schreiber, J. dissenting) (wherein the Supreme Court in discussing Weiss v. Fote reflected favorably on traffic light time sequence in the original construction of intersection traffic controls as falling within the plan or design immunity of N.J.S.A. 59:4-6).
Moreover, the record belies plaintiff's argument that the timing sequence of a traffic signal represents operational or maintenance activity and not a planning-level decision. As the Deitch certification elaborates, the timing sequence of a traffic signal is an integral part of the overall planning of traffic control. As such, the wisdom of such planning, or lack thereof, "is peculiarly a function of the executive or legislative branch of government and is an example of the type of highly discretionary governmental activity which courts have recognized should not be subject to the threat of tort liability." Report, supra, Comment to § 59:4-6, at 222 (citing Fitzgerald v. Palmer, 47 N.J. 106, 110 (1966); Hughes v. County of Burlington, 99 N.J. Super. 405 (App. Div. 1968)).
In sum, the DOT is immune from liability under N.J.S.A. 59:4-6. The decision to set the sequence and timing of the traffic light constituted a plan or design within the meaning of the statute. That statute embodies the reasoning that:
[i]n the area of highway safety, ... courts should not be permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits; something more than a mere choice between conflicting opinions of experts is required before the State . .. may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public. [Weiss v. Fote, supra, 200 N.Y.S.2d at 411, 167 N.E.2d at 64].
Affirmed.
NOTES
[1] N.J.S.A. 59:4-6a provides:

Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. [N.J.S.A. 59:4-6a (emphasis added)].
[2] In Weiss, the plaintiff charged the City of Buffalo was responsible for an intersection automobile accident because there was an insufficient clearance time between the time the green signal for east-west traffic ended and the signal for north-south traffic turned green. The City had designed the operation of the lights in this manner. The New York Court of Appeals in a 4-3 decision held the City immune because the cause of action was predicated on its planned or designed method of operation. 200 N.Y.S.2d at 415, 167 N.E.2d at 67.