193 N.J. Super. 540 (1984)
475 A.2d 86
STEPHEN KOLITCH, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF ALAN KOLITCH, A MINOR, DECEASED, PLAINTIFF-APPELLANT,
v.
STEFAN R. LINDEDAHL, ESTATE OF MARILYN BRADLEY AND JOHN A. BRADLEY, DEFENDANTS, AND STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
JOHN A. BRADLEY, AS ADMINISTRATOR AD PROSEQUENDUM FOR THE HEIRS-AT-LAW OF PHILIP M. BRADLEY, DECEASED, DAVID A. BRADLEY, DECEASED, AND MARILYN B. BRADLEY, DECEASED; AS ADMINISTRATOR OF THE ESTATES OF PHILIP M. BRADLEY, DECEASED, DAVID A. BRADLEY, DECEASED, AND MARILYN B. BRADLEY, DECEASED; AND INDIVIDUALLY, PLAINTIFF-APPELLANT,
v.
STEFAN R. LINDEDAHL, DEFENDANT, AND STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 1984.
Decided April 24, 1984.
*543 Before Judges FRITZ, FURMAN and DEIGHAN.
Murry P. Brochin argued the cause for appellants (Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor, attorneys for John A. Bradley; Wilentz, Goldman & Spitzer, attorneys for Stephen Kolitch; Douglas T. Hague, Judy G. Russell and Murry P. Brochin on the brief).
*544 Benjamin Clarke, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel).
The opinion of the court was delivered by FURMAN, J.A.D.
From summary judgment on motion in favor of the State plaintiffs in the two consolidated actions appeal. Both actions arise from a motor vehicle accident which resulted in four deaths on Route 9W in the Borough of Alpine in Bergen County on the night of October 31, 1978. Decedent Marilyn Bradley was driving northbound when her motor vehicle was struck head-on by a motor vehicle driven by defendant Lindedahl which had crossed the center line after losing control in a stretch of Route 9W known as Walker's Hollow. The other three decedents were passengers in the Bradley vehicle.
Plaintiffs' theory of liability against the State, premised on N.J.S.A. 59:4-2, is for wrongful deaths caused by a dangerous condition of property, the sharp curve on a downgrade at Walker's Hollow where the safe speed for motor vehicles, according to their expert, was only 30 miles per hour, preceded within 200 feet by a 50 mile per hour speed limit sign in an area of poor visibility without highway lights or reflectors and with overgrown foliage and a tree canopy overhead.
Defendant State raises the defense of plan or design immunity under N.J.S.A. 59:4-6. According to the certification of a Department of Transportation engineer, the stretch of Route 9W known as Walker's Hollow has virtually the same "vertical geometrics" affecting motor vehicles traversing the roadway as when designed and built in 1925, when the speed limit was 30 miles per hour. Defendant State also relies upon the defenses of immunity under N.J.S.A. 59:2-3 for the exercise of its governmental discretion in setting a 50 mile per hour speed limit and of immunity under N.J.S.A. 59:4-5, which exempts *545 public entities from liability "for an injury caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices."
On the record in the light most favorable to plaintiffs, as we must view it on appeal from summary judgment against plaintiffs, Route 9W in Walker's Hollow, with its steep curve and poor visibility, was a dangerous condition for motor vehicles travelling at the speed limit of 50 miles per hour, and motorists, such as defendant Lindedahl, unfamiliar with the roadway and the near approach of Walker's Hollow, may have been induced to travel at the unsafe speed of 50 miles per hour in reliance upon the speed limit sign posted only 200 feet away.
At the time of the accident the roadway in Walker's Hollow was substantially as designed and built in 1925 and remained safe for motor vehicles travelling at the 1925 speed limit of 30 miles per hour. We conclude that the State is shielded from liability for the condition of the roadway even though dangerous at 50 miles per hour, by plan or design immunity under N.J.S.A. 59:4-6 which is perpetual, Costa v. Josey, 83 N.J. 49, 54 n. 1 (1980); Comment to this section in Report of the Attorney General's Task Force on Sovereign Immunity (1972).
Plaintiffs' argument goes further: that is, that the State was actively negligent in posting a speed limit sign that "directly contributed to the accident," in combination with the dangerous condition of the roadway in Walker's Hollow for vehicles travelling at 50 miles per hour. Plaintiffs do not dispute that the setting of a speed limit of 50 miles per hour over most of Route 9W was an exercise of governmental discretion. Nor do they advance the arguments that the State was liable for failing to post a lower speed limit sign, such as 30 miles per hour, or a sign warning of a curve and downgrade ahead, arguments foreclosed by N.J.S.A. 59:4-5. Rather, plaintiffs challenge as operational, not discretionary, the State's posting of a 50 mile per hour speed limit sign amounting to a "trap" in close *546 proximity to the "vertical sag curve" of Walker's Hollow, which was safely negotiable at 30 miles per hour but not at 50 miles per hour. In support of that claim plaintiffs also cite the poor lighting and obstructions to visibility confronting motorists approaching Walker's Hollow and the 25 year history of 4.4 accidents per year at Walker's Hollow, which they assert to be a "high accident rate."
At oral argument before us plaintiffs also urged the applicability of N.J.S.A. 59:4-4, which provides:
Subject to section 59:4-2 of this act, a public entity shall be liable for injury proximately caused by its failure to provide emergency signals, signs, markings or other devices if such devices were necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.
We reject that further argument. N.J.S.A. 59:4-4, in contradistinction to N.J.S.A. 59:4-5, is limited to emergency conditions which a public entity may have a duty enforceable under N.J.S.A. 59:4-2 to warn against; it is inapplicable to ordinary, continuing traffic conditions for which governmental failure to provide warning signs is shielded by immunity under N.J.S.A. 59:4-5, see Spin Co. v. Maryland Cas. Co., 136 N.J. Super. 520 (Law Div. 1975); Comment to N.J.S.A. 59:4-5 in Report of the Attorney General's Task Force on Sovereign Immunity (1972).
Governmental tort immunity is the rule except as otherwise expressly provided in the Tort Claims Act, N.J.S.A. 59:2-1; English v. Newark Housing Authority, 138 N.J. Super. 425, 428-429 (App.Div. 1976). Liability under the act is, in turn, subject to the bar of any immunity expressly set forth in the act. Plaintiffs advance no argument under N.J.S.A. 59:2-2, which establishes liability of a public entity for negligence of a public employee "within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." Nor do we view that section as applicable. Arguably, the State through its employees was *547 negligent in posting a speed limit sign amounting to a trap to motorists who relied on it, or in failing to remove the sign or to lower the speed limit despite a high incidence of accidents at Walker's Hollow and despite complaints and warnings from Borough of Alpine officials and various nearby residents, including three years before from plaintiff Bradley. But the standard for imposing governmental tort liability under N.J.S.A. 59:2-2 is whether the same act or omission by a private individual would be actionable in tort; private individuals have no responsibility to and do not post speed limit signs on public highways.
The issue we must resolve, therefore, is whether plaintiffs presented a prima facie case of liability for wrongful deaths caused by a dangerous condition of public property, that is, the 200 foot stretch of Route 9W from the posted speed limit sign through Walker's Hollow and, if so, whether liability was nevertheless barred by any express immunity under the act.
In our view no express immunity under the act is a bar. Plan or design immunity shields the State from liability for the plan or design of the roadway in Walker's Hollow but not for a dangerous condition of the 200 foot stretch of roadway for motorists travelling at the posted speed limit, as the result of the "vertical sag curve" in Walker's Hollow in combination with a misleading speed limit sign and poor visibility. Discretionary immunity would also be inapplicable, upon a jury determination that the posting of the 50 mile per hour speed limit sign was the result of an operational and not a planning level decision, Costa, supra at 55.
Plaintiffs cite and rely on De La Rosa v. City of San Bernardino, 16 Cal. App.3d 739, 746, 94 Cal. Rptr. 175 (Ct. of App. 1971), which, in reversing a directed verdict for the public entity, applies parallel sections of the California Tort Claims Act, Cal.Gov't Code § 810 et seq., the model of the New Jersey Tort Claims Act. In De La Rosa a stop sign had been obscured by a tree and shrubbery and a "stop sign ahead" legend on the *548 pavement had faded. An accident occurred within the intersection between a motor vehicle driven through the stop sign and a motor vehicle driven on the through street by a motorist who was familiar with the intersection and relied upon the stop sign governing traffic on the intersecting side street. The court enunciated the general principle: "... [A]lthough a public entity is not liable for failure to install traffic signs or signals ..., when it undertakes to do so and invites public reliance upon them, it may be held liable for creating a dangerous condition in so doing." That general principle is applicable to continuing dangerous conditions, as in De La Rosa and as asserted on the appeal before us, and is not limited to emergency conditions arising from a traffic sign or signal malfunction, as in Bergen v. Koppenal, 52 N.J. 478 (1968).
Other California reported opinions in accord include Teall v. City of Cudahy, 60 Cal.2d 431, 386 P.2d 493, 34 Cal. Rptr. 869 (Sup.Ct. 1963); Harland v. State, 75 Cal. App.3d 475, 479, 142 Cal. Rptr. 201 (Ct. of App. 1977); Bakity v. County of Riverside, 12 Cal. App.3d 24, 90 Cal. Rptr. 541 (Ct. of App. 1970).
We conclude that, in the light most favorable to plaintiffs, the record would have supported a jury determination of a dangerous condition of the roadway from the posted speed sign through Walker's Hollow; dismissal of plaintiffs' action to impose liability against the State under N.J.S.A. 59:4-2 was error.
In our view disputed questions of fact for jury resolution were as follows, the final seven to be answered only if the answer to the first was in the affirmative:
1. Was Route 9W from the posted speed limit sign through Walker's Hollow in a dangerous condition involving substantial risk of injury to a motorist driving with due care?
2. Did defendant Lindedahl rely upon the posted speed limit of 50 miles per hour in driving into Walker's Hollow at a speed in excess of a reasonably safe speed for road conditions there?
3. Was it reasonably foreseeable that a motorist would rely upon the posted speed limit of 50 miles per hour and sustain an accident in Walker's Hollow *549 because he was driving at a speed in excess of a reasonably safe speed for road conditions there?
4. Was the dangerous condition created by a negligent or wrongful act or omission of a State employee within the scope of his employment?
5. Did the State have actual or constructive notice of the dangerous condition in sufficient time prior to the accident to have taken measures to protect against it?
6. Was the failure of the State to take measures to protect against the dangerous condition palpably unreasonable?
7. Was the dangerous condition a proximate cause of the accident?
8. Were the placement and retention of the 50 mile per hour speed limit sign within 200 feet of Walker's Hollow operational decisions and not basic policy decisions of the State?
We reverse and remand for further proceedings not inconsistent herewith.
FRITZ, P.J.A.D. (dissenting).
I believe that my colleagues have succumbed to the blandishments of hard facts and as a consequence have invaded the legislative province. To the extent justifiable reliance appears in California law, suffice it to say I believe those cases to be incorrectly decided. I respectfully dissent.
Because I share their reaction to an apparent very real lack of sensitivity on the part of those responsible for the maintenance of this death trap, my concern for that which I regard as an unjustifiable extension of the legislation involved lacks enthusiasm. But I also share the trepidation of the trial judge respecting the unfortunate reach of that which we have done here today. In his words,
Moreover, the Legislative declaration of the Tort Claims Act at NJSA 59:1-2 provides that "government should not have the duty to do everything that might be done". Therefore, even though assuming arguendo "the area of 9W in question was never intended to support a speed of 50 miles per hour" a balance of inequities in the circumstance dictates immunity under this section. If this were not the case, then every accident would result in a multiplicity of suits that challenge the speed limit sign. Such a result is contrary to the provisions, intentions, principles, and interest of the New Jersey Tort Claims Act.
*550 It seems to me that, as was said in Hoy v. Capelli, 48 N.J. 81 (1966), concerning what was there described as the "fundamental issue" in that case,
... there are certain kinds of acts or omissions of government, no matter how they are categorized, defined or labelled or how governmental immunity from suit is to be regarded, which should not give rise to tort liability. We are certain that there are and that the situation before us is one of them. [At 87.]
Accord, Miehl v. Darpino, 53 N.J. 49 (1968).
I would affirm substantially for the reasons given by the trial judge in his written opinion.