NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1983
_____

JENNIFER STASUL, as Administratrix
of the Estate of Carlos Vladimir Rodriguez, deceased;
R. C. S., an infant by his mother
and natural guardian, JENNIFER STASUL,

Appellants

v.

STATE OF NEW JERSEY;
NEW JERSEY DEPARTMENT OF TRANSPORTATION;
MACK TRUCKS, INC.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-06-cv-05781)
District Judge: Honorable Susan D. Wigenton

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 15, 2010

Before: FISHER and COWEN, *Circuit Judges*, and DITTER,* *District Judge*.

(Filed: July 28, 2010)
_____

OPINION OF THE COURT

_____

*Honorable J. William Ditter, Jr., Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

_____

FISHER, *Circuit Judge*.

Jennifer Stasul, as administratrix of the estate of Carlos Vladimir Rodriguez and natural guardian of R.C.S., an infant, appeals the District Court's grant of summary judgment on her various claims against the State of New Jersey and the New Jersey Department of Transportation under the New Jersey Tort Claims Act ("NJTCA"). The District Court found as a matter of law that the NJTCA confers immunity from liability on the State defendants. We will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On the night of December 2, 2004, Carlos Vladimir Rodriguez, a professional trucker, was operating a trucking rig on Interstate 95, near Fort Lee, New Jersey. While exiting Interstate 95 onto New Jersey State Route 4, Mr. Rodriguez's truck rolled over and his head struck the base of a damaged light pole. He was fatally wounded.

Mr. Rodriguez is survived by one son. The child's mother, Jennifer Stasul ("Stasul"), as natural guardian and administratrix of the estate, brought suit in the United States District Court for the District of New Jersey for wrongful death against the State of New Jersey and the New Jersey Department of Transportation (collectively "the State"),

2

and Mack Trucks, Inc. The Complaint alleged, as to the State defendants, that the State had failed to post appropriate speed limits on the highway exit, that the statutory default speed limit was too fast, that the State had failed to post emergency warning signs to warn of a dangerous road condition, and that a road resurfacing project in 1999 and 2000 had caused a dangerous condition on the road. The State moved for summary judgment.

The District Court granted summary judgment for the State on all claims, holding that various immunity provisions of the NJTCA insulated the State from all liability. The District Court held that, under N.J. Stat. Ann. § 59:4-5, the State is not liable "for an injury caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices," disposing of any claim based on the alleged failure to provide emergency signs and the failure to post a speed limit sign. (Dist. Ct. Slip Op. 7-8.) The Court further held that, under N.J. Stat. Ann. § 59:2-3(b), the State is "immune from any suit based on either enactment of [a] speed-limit statute or [a] speed limit regulation," disposing of Stasul's claim that the statutory default speed limit was too fast. (*Id.* at 8-9.) Next, the Court reasoned that the liability created in N.J. Stat. Ann. § 59:4-2 for "dangerous conditions" was precluded by the aforementioned immunities "regardless of whether a dangerous condition existed on the Route 4 Westbound ramp at the time of the Decedent's accident." (*Id.* at 11.) Finally, the Court concluded that, to the extent Stasul's dangerous condition claim alleged an omission other than the failure to post signs or enact

3

a lower speed limit, "[t]he vague allegations that Defendants are potentially liable for not doing more cannot defeat summary judgment." (*Id.* at 11-12.)

Stasul filed this timely appeal, limited to the District Court's grant of summary judgment on her dangerous condition claim.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's grant of summary judgment *de novo*. *Union Pac. R.R. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 125 (3d Cir. 2002). "Summary judgment is appropriate when 'there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). On motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences therefrom in that party's favor." *N.J. Transit Corp. v. Harsco Corp.*, 497 F.3d 323, 326 (3d Cir. 2007).

## III.

Section 59:4-2 of the NJTCA establishes state liability for dangerous conditions that exist on public property. *See Manna v. State*, 609 A.2d 757, 760 (N.J. 1992). The statute defines a "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it

4

is reasonably foreseeable that it will be used." N.J. Stat. Ann. § 59:4-1(a). A public entity will be liable for a dangerous condition on its property

> if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, [and] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred . . .

N.J. Stat. Ann. § 59:4-2. The plaintiff must also establish that an agent of the State created the dangerous condition or that the State had actual or constructive knowledge of the condition and time to take measures to protect against the condition. *Id.*

As the District Court correctly noted, "any immunity provision in the act or by common law will prevail over the liability sections." *Pico v. New Jersey*, 560 A.2d 1193, 1197 (N.J. 1989). Thus, a court's first inquiry is "whether a specific provision affords immunity to the public entity for the tortious act or omission." (Dist. Ct. Slip Op. at 6.) The District Court reasoned that, because Stasul's dangerous condition claim necessarily alleged a failure of the State to enact a speed limit and post signs, the statutory immunities for those liabilities precluded suit under N.J. Stat. Ann. § 59:4-2. We agree.

Stasul alleges that the interstate exit ramp was in a dangerous condition at the time of Mr. Rodriguez's accident. In Plaintiff's Supplemental Statement of Facts, Stasul alleged that a "maintenance resurfacing project" took place on the exit ramp in 1999 and 2000, during which two inches of asphalt were removed and replaced. (App. 55a.) Carlos Ulloa, Principal Transportation Engineer with the New Jersey Department of Transportation, was involved in that resurfacing project and testified that the resurfacing

was a significant change to the roadway and that it may have resulted in cars traveling faster on the exit ramp. (App. 353a, 358a.) Stasul's expert report indicated that the resurfacing was conducted in the area of the accident. (App. 42a-26.)

Even if we assume *arguendo* that this evidence demonstrates that the maintenance project resulted in a faster exit ramp, Stasul's claim still does not survive. Stasul repeatedly argues that the State should have rectified this condition by posting speed limit signs. In other words, Stasul alleges it is the driver's lack of knowledge of the appropriate speed limit, and not the condition of the road itself, that is dangerous. (*See* App. 68a (Stasul arguing that the road was in a dangerous condition because it "is important for the driver to know [the speed] before he begins to travel on the road. Otherwise, he has no way of knowing what the safe speed is for the roadway").) This places Stasul's dangerous condition claim squarely within the immunities of N.J. Stat. Ann. §§ 59:2-3(b) and 59:4-5.

Stasul argues that she falls within the reasoning in *Daniel v. State*, 571 A.2d 1329 (N.J. Super. Ct. App. Div. 1990), where the court held that the State could be liable for injuries resulting from a road maintenance project that created a dangerous condition. In *Daniels*, the plaintiff brought a claim against the State of New Jersey for wrongful death resulting from an automobile accident after a car hit a road median and catapulted into oncoming traffic. *Id.* at 1332-33. The plaintiff alleged that the accident was caused by maintenance work on the median which had the effect of reducing the curb height of the

6

median from its original eight inches to two inches. *Id.* at 1332. The State asserted its immunity under N.J. Stat. Ann. § 59:4-6, which immunizes the State for "improvements" to public property pursuant to a "plan" or "design." The court rejected the State's argument that road maintenance was an "improvement" within the statutory meaning and held that N.J. Stat. Ann. § 59:4-6 "does not immunize a governmental body from responsibility for dangerous conditions created by its careless or negligent affirmative acts arising out of its maintenance as distinguished from improvements to its property." 571 A.2d at 1346.

*Daniels*, however, stands for the limited proposition that immunity under N.J. Stat. Ann. § 59:4-6 for "improvements" does not immunize the State from negligent road maintenance claims. *Daniels* does not preclude application of the myriad other statutory immunities if a specific claim alleges a State act or omission that falls within those immunities. Here, Stasul's dangerous condition claim is inextricably linked to her claims that the State failed to post speed limit or emergency signs and failed to enact a lower default speed limit. (*See* App. 69a (Stasul alleging the road was in a dangerous condition because the State "fail[ed] to post this speed for the roadway").) The record is devoid of any evidence, or even an allegation, that a faster exit ramp is itself a dangerous condition.[1]

---

[1] For this reason, we alternatively hold that the dangerous condition claim cannot survive summary judgment because Stasul has not demonstrated that a dispute of material fact exists as to whether a faster ramp is a dangerous condition. *See* Fed. R. Civ. P. 56(c).

Because any claim premised on the State's alleged failure to post signs or enact a lower default speed limit are clearly immunized under N.J. Stat. Ann. §§ 59:2-3(b) and 59:4-5, the District Court did not err in granting summary judgment on immunity grounds.

IV.

For the foregoing reasons, we will affirm the decision of the District Court.