139 N.J. Super. 569 (1976)
354 A.2d 681
MARLON RODGERS, AN INFANT BY HER GUARDIAN AD LITEM, BRENDA RODGERS, AND BRENDA RODGERS, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
PASSAIC HOUSING AUTHORITY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1976.
Decided March 11, 1976.
*570 Before Judges ALLCORN, KOLE and KING.
Mr. Robert J. Passero argued the cause for appellants (Messrs. Raff & Passero, attorneys).
Mr. Allan Maitlin argued the cause for respondent (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
*571 The opinion of the court was delivered by KING, J.S.C., Temporarily Assigned.
Plaintiff appeals from an order for summary judgment in favor of defendant dismissing the complaint on the ground that defendant is immune from liability under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. In April 1973 the infant plaintiff was visiting her grandmother's tenement house apartment, owned and operated by defendant housing authority, when she burned her legs on uninsulated piping used to heat the apartment. Defendant asserted immunity under N.J.S.A. 59:4-6 which precludes legal responsibility
* * * for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance * * * by the legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.
The project where defendant was injured was constructed in the early 1950s pursuant to plans and specifications prepared in accordance with the minimum requirements of the Housing and Home Finance Agency and the Public Housing Administration of the Federal Government and approved by the local, state and federal authorities in 1951. The heating plans were in accordance with the extant federal standards, specifically, Bulletin No. LR-13, entitled "Guide Specifications, PHA Low-Rent Housing Bulletin," which stated: "Piping exposed to view in dwelling units, and in finished spaces of buildings, need not be insulated." Plaintiff argues that insulated piping is not within the concept of "plan or design" but is more properly classified as "maintenance." Since this aspect of the original construction was covered by the applicable federal specifications at the time of construction we would have to adopt a peculiarly strained concept of "maintenance" to accept plaintiff's argument. The presence of uninsulated piping in residential facilities has *572 been characterized as a "design" situation by our Supreme Court in considering the question of an architect's professional liability after completion. Totten v. Gruzen, 52 N.J. 202 (1968). The decision to leave the insulation off the pipes pursuant to the federal standard for low cost housing is clearly the type of "plan or design of public property" contemplated by the legislative language.
Plaintiff further notes the regulations of the Department of Community Affairs relating to multiple dwellings adopted in 1968 which require such insulation as was lacking here. N.J.A.C. 5:10-19.4(1)(3):
The heating system, including such parts as heating risers, ducts and hot water lines shall be covered with an insulating material or guard to protect occupants and other persons on the premises from receiving burns due to chance contact.
Plaintiff asserts that this regulation should control over the statutory language found in the New Jersey Tort Claims Act which became effective July 1, 1972. N.J.S.A. 59: 14-4. Unquestionably if defendant were a private owner, plaintiff would have a valid cause of action. Coleman v. Steinberg, 54 N.J. 58 (1969). However, in adopting the Tort Claims Act the legislature has clearly specified the limits and circumstances under which governmental entities should be liable in tort. We find it clear from the face of the statute, that under the factual setting here, the legislature intended to confer immunity in the area of the plan or design of a public structure where the original construction met the applicable and controlling standards. This conclusion is supported by the comment under N.J.S.A. 59:4-6.
We do not believe the Legislature, in passing the Tort Claims Act, intended to divest governmental bodies of a broad area of immunity specifically conferred under the act merely because another branch of government, subsequent to original construction, issued safety regulations which upgraded previous safety standards. Without more, the adopting *573 in 1968 by the Department of Community Affairs of a regulation which sets a higher standard than the federal and other governmental bodies required in 1951 when the plans for the present building were approved does not destroy the Passaic Housing Authority's legislatively conferred immunity.
Affirmed.