STEPHANIE THOMPSON, GENERAL ADMINISTRATRIX OF THE ESTATE OF TAMARA THOMPSON, AN INFANT, DECEASED; STEPHANIE THOMPSON, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF TAMARA THOMPSON, AN INFANT, DECEASED; STEPHANIE THOMPSON, INDIVIDUALLY; AND NATHANIEL THOMPSON, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. NEWARK HOUSING AUTHORITY, DEFENDANT-RESPONDENT.

Argued October 21, 1985—Decided October 14, 1987.

*Alvin R. Leonard* argued the cause for appellants.

*Stanley P. Fishman* argued the cause for respondent (*Greenberg, Margolis, Ziegler, Schwartz, Dratch & Fishman,* attorneys; *Michael L. Dermody* and *Marc M. Kaye,* on the briefs).

PER CURIAM.

This case concerns the death of a five-year-old child in a fire. Plaintiffs allege a dangerous condition at defendant's high-rise apartment building as a cause of death. Plaintiffs further assert the absence of smoke detectors as evidence of the dangerous condition. We granted certification, 99 *N.J.* 176 (1984), to review the Appellate Division's determination, in an unreported opinion, that defendant, Newark Housing Authority (the Authority), is immune from liability for plaintiffs' claims under the "plan or design" immunity afforded by *N.J.S.A.* 59:4-6, part of the New Jersey Tort Claims Act, *N.J.S.A.* 59:1-1 to :12-3 (the Act). In that court's view "the installation of a smoke detector system would have been integral to the original construction of defendant's high-rise apartment," mandating as a matter of law that plaintiffs' claims be barred because of plan or design immunity.

We reverse. We do not agree with the court below that it must be concluded "as a matter of law" that the installation of smoke detectors, or, more accurately, the decision not to provide for such installation, was integral to the construction of the apartments. Moreover, defendant's proofs do not otherwise require dismissal of plaintiffs' claims on the basis of design immunity.

At the outset we emphasize what this case is about, what it is not about, and the limited effects that follow from rigorous analysis of the principles of decision at work here. Our decision in no way indicates that the Housing Authority is or should be considered to have maintained a "dangerous condition" on the premises. Each of the strict conditions for public entity liability under *N.J.S.A.* 59:4-2 must be met. Spe-

cifically, it is plaintiffs' burden to establish not only that the fire safety condition was dangerous but that any actions by defendant to address the alleged condition were "palpably unreasonable." *N.J.S.A.* 59:4–2.

Palpable unreasonableness refers to conduct which is "plainly, obviously, distinctly or manifestly unreasonable." *Polyard v. Terry,* 148 *N.J.Super.* 202, 216 (Law Div.1977), rev'd on other grounds, 160 *N.J.Super.* 497 (App.Div.1978), aff'd, 79 *N.J.* 547 (1979). The burden of proving that the action or inaction of the public entity is so unreasonable as to warrant a recovery under *N.J.S.A.* 59:4–2 rests with the plaintiff. *Kolitch v. Lindedahl,* 100 *N.J.* [485] at 493; *see also Fox v. Township of Parsippany-Troy Hills,* 199 *N.J.Super.* 82, 90–91 (App.Div.), certif. den., 101 *N.J.* 287 (1985). [*Wooley v. Board of Chosen Freeholders,* 218 *N.J.Super.* 56, 61–62 (App.Div.1987)]

In addition, the Housing Authority's discretionary decision "in the face of competing demands * * * [about] how [best] to utilize or apply existing resources," *N.J.S.A.* 59:2–3(d), in phasing-in its smoke-detector system cannot be called into question unless the factfinder "concludes that the determination of the public entity was palpably unreasonable." *N.J.S.A.* 59:2–3(d). With these preliminary observations, we address the design immunity issue as projected in this case.

I

Plaintiffs seek recovery for personal injuries of plaintiff Stephanie Thompson, property damage sustained by Stephanie and Nathaniel Thompson, and damages flowing from the injuries to and the wrongful death of Tamara Thompson as the result of a fire in plaintiffs' apartment. The apartment was located in the Scudder Homes project in Newark, a public housing complex owned and operated by the defendant Authority, which built the project in 1961.

The Thompson family moved into their Scudder Homes apartment before 1979. When constructed in 1961, the apartment buildings were not equipped with smoke detectors, but in 1979 Newark enacted an ordinance that called for the installation and maintenance of smoke detectors in sleeping areas. The ordinance mandated compliance within three months of its

passage. In fact the Authority started to install smoke detectors in 1979, but plaintiffs' apartment was one of many not yet equipped with the safety devices when a fire broke out on April 6, 1980. In the confusion of her flight from the premises with her other children, Stephanie Thompson left behind her five-year-old daughter Tamara, who in her effort to escape fell from a sixth-story window in the apartment. She died the following day. Given the posture of the case as it comes to us on judgment for defendant on motion at the close of the evidence, *R.* 4:40–2, we assume that the absence of smoke detectors was a proximate cause of plaintiffs' injuries, losses, and damages, including the injuries to and death of Tamara.

Plaintiffs' complaint sets forth a cause of action under the Act without referring, however, to any specific section as a basis for liability. Defendant's answering pleading likewise raises the Act as a defense without pinpointing any particular section or provision as a ground for immunity. We are satisfied nevertheless that the parties and both courts below perceived the case as presenting the issue of liability arising from a dangerous condition of the property, see *N.J.S.A.* 59:4–2, and the issue of immunity for "plan or design," as provided by *N.J.S.A.* 59:4–6. Likewise adverted to at trial was *N.J.S.A.* 59:2–3, which relieves a public entity from liability for the exercise of discretion when, in the face of competing demands, it determines whether and how to use or apply existing resources, including those allocated for equipment, facilities, and personnel, "unless a court concludes that the determination of the public entity was palpably unreasonable."

The foregoing statutory sections provide the framework for our analysis. The Act's general liability section, *N.J.S.A.* 59:4–2, reads in full as follows:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4–3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

As previously noted, to recover under this section plaintiffs must demonstrate that because of the absence of smoke detectors the property was in a dangerous condition at the time of the fire; that their injuries and losses were proximately caused by that dangerous condition; that the dangerous condition created a reasonably foreseeable risk of the kind of injuries and damages that were incurred; that a public employee created the dangerous condition or that the public entity had notice in time to protect against the condition itself; and that the action or inaction of the public entity in respect of its efforts to protect against the condition were palpably unreasonable. *See Kolitch v. Lindedahl,* 100 *N.J.* 485, 492–93 (1985) (citing *Brown v. Brown,* 86 *N.J.* 565, 575 (1982)).

To carry their burden of proof plaintiffs produced a licensed professional engineer, Harold Richter, with expertise in the area of fire-prevention devices and alarm systems. Richter's inspection of plaintiffs' apartment after the fire revealed, among other asserted shortcomings, the absence of smoke detectors and of doors to reduce the hazards posed by a fire spreading from one area of the apartment to another. According to Richter the installation of any one of a number of "very inexpensive, very effective smoke-detecting systems" would have given more notice to the occupants; and in his opinion it was therefore "quite probable that earlier action could have been taken to either put out the fire or clear everybody out of the fire area and would have prevented this accident." Richter assumed that the buildings were constructed in "the 1950's or so" (actually it was 1961), wherefore he acknowledged that although smoke detectors were then available, they were not

being installed "in these type of buildings * * * at that time." Richter's opinion was that "smoke detectors [were not] part of the original plan and design," and their absence at the time of the fire, by which time they had long been readily available, rendered the premises dangerous.

To support the defense of "plan or design" immunity, defendant relied on the testimony of Salvatore Dispenziere, who at the time of trial was employed by the Authority as Chief of Planning and Project Execution. An employee of the Authority since 1959, Dispenziere was Director of Development when the Scudder Homes project was constructed in 1961.

Through this witness defendant established that because federal funds were involved, the planning and construction phase of the project required "constant and continual meetings with the office of [Housing and Urban Development (HUD)], their architectural staff, their engineering staff, to prepare the best possible and functional structure available for the amount of money" available. In addition, a series of inspections, approvals, progress reports, and planning decisions took place during construction to make certain that the building was built in accordance with the plans and specifications. Although these plans and specifications contained such approved items as placement of the radiators directly beneath the apartment windows (significant because of the easy access such an arrangement afforded to the window through which Tamara plunged to her death), window design, layout of the apartments, and the "open" design, there was no reference to smoke detectors or other fire-safety design features such as fire escapes, alarms, or extinguishers. (None of the blueprints or design drawings was available at trial, and hence the only information in respect thereof came from Dispenziere's testimony.) In 1961 there were no statutory or regulatory or ordinance requirements of federal, state, or local authorities for the installation of smoke detectors. The Scudder Homes plans received agency approval without the inclusion of such devices.

The trial court concluded as a matter of law that the installation of smoke detectors is a design feature of a building, and "as such, there is complete immunity and you don't even get to the question of the application of discretion as described in *N.J.S.A.* 59:2-3." The court entered an Order granting judgment for defendant "due to the fact that these smoke detectors are design fixtures protected by design defect section, *N.J.S.A.* 59:4-6." The Appellate Division affirmed.

## II

The single question presented in plaintiffs' petition for certification is whether the "plan or design" immunity afforded by *N.J.S.A.* 59:4-6 relieves defendant of liability "for failure to provide smoke detectors in public housing projects despite a city ordinance requiring" such devices. Defendant contends that it acquired such immunity because the original plans and blueprints for the housing project did not require smoke detectors, indeed, made no reference to such devices; and inasmuch as the immunity, once acquired, is perpetual, it could not thereafter be lost even if the Authority did not comply with the ordinance.

■ The latter proposition is correct—that is, "[o]nce effective, the immunity is perpetual, and cannot be lost if later knowledge shows a design or plan to be dangerous, or later circumstances render it dangerous." H. Margolis and R. Novack, *Tort Claims Against Public Entities* 70 (1986) (citing *Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes,* 90 *N.J.* 582, 599 (1982)). So in this case it is clear that if the Authority gained the benefit of "plan or design" immunity in 1961, the later imposition, by ordinance, of a duty to install smoke-detection devices could not overcome the previously established immunity. *See Rodgers v. Passaic Housing Auth.,* 139 *N.J.Super.* 569, 573 (App.Div.) (adoption of post-construction safety regulations setting higher safety standards than those in effect at time of original construction did not destroy

previously acquired "plan or design" immunity), certif. denied, 71 *N.J.* 337 (1976). In this respect, as we have noted heretofore, see, *e.g., Costa v. Josey,* 83 *N.J.* 49, 53 n. 1 (1980), and *id.* at 65–66 (dissenting opinion), New Jersey has specifically rejected the approach of *Baldwin v. State,* 6 *Cal.*3d 424, 491 *P.*2d 1121, 99 *Cal.Rptr.* 145 (1972), which holds that where changed physical conditions—there, a substantial increase in road traffic —produce a dangerous condition of public property causing injury, the public entity does not retain statutory immunity from liability even though the plan or design of the construction or improvement to the public property is shown to have been reasonably approved in advance or prepared in conformity with standards previously so approved. *Id.* at 438, 491 *P.*2d at 1127–28, 99 *Cal.Rptr.* at 154–55. The principle is equally applicable to a change in circumstances wrought by an increase in scientific knowledge—here, the state of the art in smoke-detection equipment—and by the heightened awareness of the city officials in respect of the hazards of fire in public housing, resulting in an ordinance calling for the installation of such equipment.

■ The narrow issue presented by this appeal, however, is not whether the "plan or design" immunity, once acquired, was somehow lost, but rather whether in fact the Authority succeeded in establishing its immunity in the first place. Principles that are by now well-embedded in our case law make it clear that the immunity did not attach and that the courts below erred in holding to the contrary. The dispositive cases are *Rodgers v. Passaic Housing Authority, supra,* 139 *N.J.Super.* 569; *Ellison v. Housing Authority of South Amboy,* 162 *N.J.Super.* 347 (App.Div.1978); and *Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes, supra,* 90 *N.J.* 582. The point on which we focus is that in order for a public entity to avail itself of the immunity (an affirmative defense on which defendant has the burden of proof, *see Birchwood, supra,* 90 *N.J.* at 599–600, the entity must demonstrate more than "that works were constructed under a permit." *Id.* at 599. Immuni-

ty is afforded "only for an approved feature of the plan or design." *Ibid.*

To understand why this is so

it will be helpful to bear in mind the rationale underlying design immunity. Basically, this defense is predicated upon the concept of separation of powers— that is, the judicial branch through court or jury should not review the discretionary decisions of legislative or executive bodies, to avoid the danger of "impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested." [*Anderson v. City of Thousand Oaks*, 65 *Cal.App.*3d 82, 89, 135 *Cal.Rptr.* 127, 131 (1976) (quoting *Cameron v. State of California*, 7 *Cal.*3d 318, 326, 497 *P.*2d 777, 782, 102 *Cal.Rptr.* 305, 310 (1972)).]

Although our Tort Claims Act departs from California policy on design immunity in that we neither require a finding that the plan be reasonable at its inception nor permit the immunity to be lost by changed conditions, *N.J.S.A.* 59:4–6, we do so because of the same basic policy—"that a coordinate branch of government should not be second-guessed by the judiciary for high level policy decisions." Legislative Comment to *N.J.S.A.* 59:4–6.

Hence it follows that there is no second-guessing unless the particular feature that causes the condition was in fact an "approved feature of the plan." Thus, if engineering drawings provide for the particular location of manhole covers that creates a dangerous condition, the public entity will be immune; but if the plans do not specify the location of the manhole, liability can be found, *Allstate Ins. Co. v. Metropolitan Sewerage Comm'n*, 80 *Wisc.*2d 10, 258 *N.W.*2d 148 (1977); or if a highway design shows centerline elevations but not the degree of "S-curve" banking, immunity does not extend to a dangerously banked curve. *Cameron v. State*, 7 *Cal.*3d 318, 497 *P.*2d 777, 102 *Cal.Rptr.* 305 (1972). Put succinctly, one basic element of plan or design immunity is that there first must be established "a causal relationship between the plan and the accident." *Ramirez v. City Redondo Beach*, 237 *Cal.Rptr.* 505, 510, 192 *Cal.App.*3d 515, 523 (Ct.App.1987). It thus cannot be concluded "as a matter of law," as the Appellate

Division held, that constructing the apartment under plans that did not cover smoke-detectors is sufficient to require a grant of immunity.

Our case law has accepted this premise that the defect that causes the injury must be in the plans before immunity is conferred.

In *Rodgers, supra,* the defendant housing authority owned and operated the premises in which the infant plaintiff's grandmother was a tenant. While visiting her grandmother the infant sustained burns when her legs came in contact with uninsulated heating pipes. 139 *N.J.Super.* at 571. The defendant raised "plan or design" immunity as a defense, and demonstrated that when the project was constructed in the early 1950s, the plan or design of the piping was prepared in conformity with standards approved by federal, state, and local authorities. Specifically, the heating plans followed a federal guideline that stated that the piping "need not be insulated." *Ibid.* In affirming summary judgment for defendant on the basis of "plan or design" immunity, the Appellate Division emphasized that the public entity had made a "decision to leave the insulation off the pipes pursuant to the federal standard * * *." *Id.* at 572.

Even more in point is *Ellison, supra,* 162 *N.J.Super.* 347. There a tenant brought suit against a housing authority on account of injuries sustained when a swinging screen door knocked the tenant off a concrete porch at the front entrance of her apartment. *Id.* at 349. The plaintiff's expert attributed the accident to the dangerous condition caused by faulty design of the porch and door. *Ibid.* The trial court upheld the authority's claim to "plan or design" immunity, but the Appellate Division reversed because of the absence of proof that "the *specific design or plan detail* alleged to constitute the dangerous condition *was the subject of prior governmental approval* or in conformity with prior approved standards." *Id.* at 351 (emphasis added). The court declared that

in order for the Authority to have prevailed on this motion it would have had to have come forward with proof of a nature and character which would exclude any genuine dispute of the fact that both the manner in which the screen door was hung and the size of the concrete platform were included in governmental approval of the plans or specifications for the project since the dangerous condition allegedly resulted from the combination of these two construction details. [*Ibid.*]

Finally, the *Ellison* court's requirements for "plan or design" immunity were endorsed by this Court in *Birchwood, supra*, 90 *N.J.* 582, in which plaintiff alleged that defendant's sewage treatment plant, operated pursuant to a permit, discharged effluent with excessive phosphorous content, resulting in pollution of plaintiff's lake, thereby rendering it unsuitable for recreational purposes. *Id.* at 587–88. The defendant interposed the defense, among others, of "plan or design" immunity. The Court held that if a public entity plans and designs a plant in conjunction with a governmental regulatory authority and the alleged pollution is brought about by the specific plan or design approved, then even if the discharge thereafter causes injury, the defendant would be entitled to immunity, but if the defendant did not so plan, design, and comply, there would be no immunity for any resulting injury. *Id.* at 598–600. The specific design or plan detail alleged to constitute the dangerous condition must have been given official approval for the immunity to attach. *Id.* at 599. Significantly for today's purposes the Court held:

Although plan or design immunity does not depend upon any showing of the reasonableness of the design, nor can it be lost by changed circumstances, * * * it *does not suffice for the public entity to show that works were constructed under a permit.* For, although liability cannot be based on the inadequacy of the design or plan, immunity from liability for an independent affirmative act * * * is afforded in the first instance only for an approved feature of the plan or design. [*Ibid.* (emphasis added).]

■ From the foregoing authorities we distill the principle that for "plan or design" immunity to attach, the public entity must establish that an approved feature of the plan sufficiently addressed the condition that is causally related to the accident. The absence of the feature simply does not demonstrate kind of approval by a "coordinate branch of government [that] should not

be second-guessed by the judiciary. Legislative Comment to *N.J.S.A.* 59:4–6. An example will perhaps illustrate the point. Assume that original building plans contained no specification of the kind of door locks for an apartment, and that it was contended that "dead-bolt" locks were reasonably necessary to prevent a dangerous condition in common areas. What decision do we second-guess when (absent consideration of other defenses under the Tort Claims Act) we permit consideration of whether, as a matter of tort duty, the public entity has an obligation to install dead-bolt locks?

■ Of course, we do not intend or mean that a public entity must necessarily show that a feature of the plans (such as smoke detectors) was specifically considered and rejected. If the plans sufficiently embrace the condition that is the subject matter of plaintiff's claim, they should be given pre-emptive effect; if they do not, the defense of plan or design immunity must fall.

We recognize that we are leaving undefined the issue of the extent to which plans must "sufficiently" embrace the condition in question before immunity attaches, but we are content to let resolution of that issue await a case in which it is squarely raised. Here there is simply no evidence that the plans embraced the condition about which plaintiff complained. The plans themselves were not available, and Dispenziere's testimony demonstrates that the subject of fire safety never came up.

Our conclusion in this regard is consistent with another provision of the Act, *N.J.S.A.* 59:2–3, which bestows immunity for discretionary activities. See *supra* at 529. Immunity under that statutory section requires "proof that the discretion was actually exercised [at the planning level] by an official who, faced with alternative approaches, weighed the competing policy considerations and made a conscious choice" *Costa v. Josey, supra,* 83 *N.J.* at 59, *quoted in Birchwood, supra,* 90 *N.J.* at 601. And perhaps most importantly, our decision is consistent with one of the essential policies behind governmen-

tal immunity generally, which is to avoid second-guessing by the courts of basic policy decisions made by other branches and units of government. "It cannot be a tort for government to govern." *Amelchenko v. Borough of Freehold,* 42 *N.J.* 541, 550 (1964). But if, as here, there has been no basic policy decision made, there is no decision to be second-guessed.

We underscore again the narrow reach of our decision, which does no more than determine that the defendant Authority's noninclusion of smoke detectors in the original plans and design of the housing project does not afford a basis for "plan or design" immunity. We imply no view of the effect of the 1979 ordinance on the Authority's liability, nor do we pass on the availability of immunity for discretionary activities under *N.J.S. A.* 59:2–3, particularly section (d) thereof, beyond the observation that the Appellate Division's dismissal of the latter as "irrelevant" is open to question. Those issues were not before us on this appeal.

Judgment reversed. The cause is remanded to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance* —None.