**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3985-17T4

MICHELLE WILLIAMS-STEVENS
and EDDIE STEVENS,

      Plaintiffs-Respondents,

v.

NEWARK PUBLIC SCHOOLS,
NEWARK BOARD OF EDUCATION,
and WEEQUAHIC HIGH SCHOOL,

      Defendants-Appellants,

and

THE CITY OF NEWARK,

      Defendant.

_____

          Argued November 15, 2018 - Decided July 23, 2019

          Before Judges Accurso, Vernoia and Moynihan.

          On appeal from the Superior Court of New Jersey, Law
          Division, Essex County, Docket No. L-2944-13.

Natalie S. Watson argued the cause for appellants (McCarter & English, LLP, attorneys; Matthew J. Tharney and Natalie S. Watson, of counsel and on the briefs; Ryan A. Richman, Christopher A. Rojao and Sarah T. Tremer, on the briefs).

William S. Greenberg argued the cause for respondents (Greenberg Minasian, LLC, attorneys; William S. Greenberg, of counsel and on the brief; Mitchell L. Goldstein, on the brief).

PER CURIAM

In this Title 59 matter, defendant Newark Public School District, improperly pled as Newark Public Schools, Newark Board of Education and Weequahic High School, appeals from the denial of its motion for summary judgment dismissing plaintiff Michelle Williams-Stevens's complaint under the Tort Claims Act, N.J.S.A. 59:1-1 to 59:12-3. We reverse.

The essential facts are undisputed. Plaintiff and several members of her family entered the Weequahic High School gym in the early evening of May 18, 2011 to see her daughter in a "toast off" before the senior prom. It had rained hard earlier in the day and there were puddles in the parking lot. As she entered the building, plaintiff wiped her feet on the Pedimat, a built-in rug with metal ridges designed to shake dirt and water from the shoes of people entering the building. As she crossed the vestibule, plaintiff slipped and fell, suffering injuries.

2                                                                                   A-3985-17T4

Plaintiff asserted the floor was wet with rainwater tracked from outside, although she had not noticed any water on the floor before she fell. She claimed she was helped up by two security guards stationed nearby, and continued into the gym to see her daughter. The security guards did not see any water in the area where plaintiff fell. The school had a custodian monitoring the gymnasium and vestibule area for slip or trip hazards, but he was not in the immediate vicinity when plaintiff fell. There were runners and mats in other locations throughout the gym that evening, but none in the vestibule.

Plaintiff's expert observed the width of the Pedimat to extend seventy-four inches into the vestibule and claimed the concrete floor "had been finished with a hard, macroscopically smooth paint." Although asserting "it is inherently better to provide a surface that is intrinsically slip resistant," by, for example, employing a surface coating containing aggregate in a binder, "in the absence of that, mats and runners . . . are recognized to minimize slipping hazards." The expert also opined it was incumbent on the District to provide additional janitorial services "to mop up extra moisture tracked in" during inclement weather.

Although there was nothing in the record to suggest how long the water had been on the floor, and plaintiff's expert conceded it was unlikely to have

A-3985-17T4

been conspicuous in light of the number of people arriving to see the "toast off," he opined that in the absence of "policies and procedures for making regular documented, assured, and accountable inspections of the premises for hazards to safety, the District cannot demonstrate the maximum amount of time that any water accumulations could go unnoticed." He thus concluded defendant "cannot suggest" the water causing plaintiff to slip and fall "had occurred so recently as to have escaped their attempts to assure the safety of the foyer by means of monitoring its condition." He also opined that even if "water had gotten to the foyer floor so recently as to have missed reasonable discovery efforts, had the floor been made reasonably slip resistant whether wet or dry, or had walk-off mats been laid the length of the foyer, then the imperative for prompt discovery would have been immaterial."

Plaintiff's expert concluded the water tracked into the building presented a substantial risk of injury, and that the propensity for danger could have been eliminated by adding a slip-resistant texture to the floor finish or placing mats in the vestibule in the same manner as they had been placed in other parts of the gym. The expert claimed the failure to have protected persons entering the gym against slipping and falling on the foreseeably wet and slippery floor was palpably unreasonable.

4

Having reviewed records provided by the District, defendant's expert noted the epoxy coating on the concrete floor of the vestibule contained "graded silica aggregates" to increase the roughness of the surface and provide additional slip resistance. He opined the "material and methods of construction" of the floor "were well suited for providing adequate pedestrian slip resistance and would be expected to minimize the likelihood of slip." He concluded the epoxy floor coating the District chose, PalmaLite UniKrom 125 seamless solid color epoxy with silica aggregate, coupled with the permanent Pedimat and having custodians "patrol for water was reasonable and exceeded the industry standards for providing a safe and slip resistant pedestrian surface where wet conditions are foreseeable."

Plaintiff subsequently admitted the District's design and construction department considered various types of flooring before selecting and approving the PalmaLite product containing "graded silica aggregates," which increase the roughness of the floor and thus its slip-resistant properties. She further admitted a visitor to the gym would first cross the Pedimat, designed "to reduce the risk of tracking debris, dirt and water into the vestibule and to dry shoes," before "walk[ing] across slip-resistant epoxy flooring."

A-3985-17T4

Defendant filed its summary judgment motion at the end of discovery, arguing it was immune from liability pursuant to the plan-or-design immunity provision of the Tort Claims Act, N.J.S.A. 59:4-6, and was otherwise immune because plaintiff could not establish the vestibule floor was in a dangerous condition of which defendant had actual or constructive notice, and in any event, its conduct was not palpably unreasonable.

Plaintiff countered that questions of material fact precluded summary judgment. Specifically, plaintiff contended there were questions surrounding whether defendant had notice of the dangerous condition of the wet floor, especially as runners and mats had been employed in other areas of the gym. Plaintiff contended it was foreseeable that the floor would become wet in light of the weather and the number of people entering the gym, and defendant's failure to warn of or rectify the condition was palpably unreasonable.

The trial court judge noted that plaintiff's expert focused on the foreseeability of a slip-and-fall hazard, whereas defendant's expert focused on the design of the floor as a basis for immunity. Without any discussion of the Tort Claims Act's requirements, the judge concluded that although the arguments put forth by defendant were

> very — very good, . . . I think in a case like this where
> there clearly is evidence that if you give the plaintiff

6

the benefit of every inference that the defendant had notice, either actual or constructive notice, that there was a slippery condition, simply by evidence of the fact that they used these mats and the — these warning signs on other areas.

And simply . . . the inferences that the plaintiff . . . gets at a summary judgment motion, which they probably won't get at trial, you know, is really important when you look at the water and how it got there, what it did. All the — those inferences lead this court to believe that the defendant has not — not satisfied its very difficult burden to prove that these immunities apply. So I think there are genuine issues of material fact.

And as to the applicability of both the design immunity and the dangerous condition immunity, based upon the obvious condition of the water, and steps that the defendants had taken which infers [sic] that they were aware that there was water there, the easy availability of putting mats and — or warning signs in the area. So while it's an extremely close call, I'm going to deny the motion for summary judgment.

We review summary judgment using the same standard that governs the trial court. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). Thus, we consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)).

A-3985-17T4

As our Supreme Court regularly reminds in Title 59 matters, "[t]he Act's 'guiding principle' is 'that immunity from tort liability is the general rule and liability is the exception.'" O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 345 (2019) (quoting Coyne v. State, 182 N.J. 481, 488 (2005)). N.J.S.A. 59:4-2 addresses a dangerous condition of public property and provides as follows:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

Thus,

> to impose liability on a public entity pursuant to that section, a plaintiff must establish the existence of a

"dangerous condition," that the condition proximately caused the injury, that it "created a reasonably foreseeable risk of the kind of injury which was incurred," that either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and that the entity's conduct was "palpably unreasonable."

[Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001) (quoting N.J.S.A. 59:4-2).]

A governmental entity, however, is also immune from liability, notwithstanding the dangerous condition of its property, if it is part of an approved plan or design. Specifically, N.J.S.A. 59:4-6 provides:

a. Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.

Our Supreme Court has explained that "[a]pplication of plan-or-design immunity turns on whether the public entity has approved the feature in question so as to immunize it from challenge." Manna v. State, 129 N.J. 341, 353 (1992). Although in order to establish design immunity a government entity must demonstrate the condition that allegedly caused the plaintiff's injury "was in fact

an approved feature of the plan," Thompson v. Newark Hous. Auth., 108 N.J. 525, 534 (1987), it need not show alternatives were "specifically considered and rejected," id. at 537. Rather, the defendant need only demonstrate it "considered 'the general condition about which a plaintiff complains in formulating the original plan or design.'" Kain v. Gloucester City, 436 N.J. Super. 466, 474-75 (App. Div. 2014) (quoting Luczak v. Twp. of Evesham, 311 N.J. Super. 103, 109 (App. Div. 1998)).

As the trial court judge noted, plaintiff's expert did not address himself to issues of design immunity, notwithstanding his opinion that had the District installed slip-resistant flooring, "the imperative for prompt discovery" of the water on which plaintiff slipped would have been eliminated. Unfortunately, the trial court judge similarly did not address the well-established law on design immunity or explain how defendant's showing fell short. It is hardly helpful to deny summary judgment based on disputed facts in what is characterized as an "extremely close" case without identifying the specific facts in dispute. See Agurto v. Guhr, 381 N.J. Super. 519, 525 (App. Div. 2005).

We are inclined to think defendant entitled to design immunity based on the record it created on the motion. Plaintiff's failure, however, to support her denial of the specific facts establishing that immunity with citations to the

record, employing instead only one-word denials, and the trial court's failure to enforce Rule 4:46-2(b) by deeming the statements admitted, make us reluctant to reach that question in the first instance, especially as it is apparent plaintiff could not otherwise survive summary judgment.

No one, including plaintiff, noticed the water on which plaintiff allegedly slipped before her fall. Her own expert opined that even if the water were visible, it would not have been conspicuous. Even assuming, however, that plaintiff could somehow establish the vestibule was in a dangerous condition of which defendant had actual or constructive notice, difficult on this record, she provided no evidence from which a reasonable jury could conclude defendant's decision to rely on the Pedimat and slip-resistant flooring, augmented by an assigned custodian to monitor the area for slipping hazards, instead of temporary mats or runners, was palpably unreasonable, that is "manifest and obvious that no prudent person would approve of its course of action or inaction," Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985), and certainly none sufficient to require submission to a jury, see Brill, 142 N.J. at 536.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11