**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0735-23

JEAN PAUL JOSEPH,
administrator of the
ESTATE OF MAGALLY
PAULEMONT and JEAN
PAUL JOSEPH, individually,

     Plaintiffs-Appellants,

v.

NEW JERSEY TURNPIKE
AUTHORITY,

     Defendant-Respondent,

and

STATE OF NEW JERSEY,
COUNTY OF UNION,
TOWNSHIP OF CLARK,
CITY OF RAHWAY, and
WINFIELD PARK,

     Defendants.

_____

CHRISTINA FERDINAND,
administrator of the ESTATE OF
FRANCE NOVEMBRE and

CHRISTINA FERDINAND,
individually,

      Plaintiffs-Appellants,

v.

NEW JERSEY TURNPIKE
AUTHORITY,

      Defendant-Respondent,

and

STATE OF NEW JERSEY,
COUNTY OF UNION,
TOWNSHIP OF CLARK,
CITY OF RAHWAY, and
WINFIELD PARK,

      Defendants.

_____

Submitted February 5, 2025 – Decided February 25, 2025

Before Judges Mayer and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket Nos. L-1187-19 and L-2089-19.

Kuhrt, Femia & Kuhrt, LLC, attorneys for appellants (David W. Kuhrt, on the brief).

McManimon, Scotland & Baumann LLC and DeCotiis FitzPatrick Cole & Giblin LLC, attorneys for respondent New Jersey Turnpike Authority (Grant W.

McGuire, Malcolm X. Thorpe, Paul Miller, and Angelo
DeFlora, on the brief).

Matthew J. Platkin, Attorney General, attorney for
respondent State of New Jersey (Sookie Bae-Park,
Assistant Attorney General, of counsel; Robert J.
McGuire, Deputy Attorney General, on the statement in
lieu of brief).[1]

PER CURIAM

Plaintiffs Jean Paul Joseph, both in his individual capacity and as administrator of the Estate of Magally Paulemont, and Christina Ferdinand, both in her individual capacity and as administrator of the Estate of France Novembre, appeal from an August 29, 2023 order granting summary judgment to defendant New Jersey Turnpike Authority (NJTA) and an October 6, 2023 order denying plaintiffs' motion for reconsideration. For the following reasons, we affirm in part and reverse and remand in part.

We recite the facts from the motion record. This case arises from a tragic and fatal single-car accident on the Garden State Parkway (Parkway). On June 16, 2017, Paulemont drove her car northbound on the Parkway while her mother, Novembre, sat in the front passenger seat. Near Parkway Milepost 137.3,

---

[1] In its brief, the State of New Jersey took no position on appeal because the claims against it were dismissed by the trial court.

Paulemont's car ran off the road, struck a tree, overturned, and fell into the Rahway River. Paulemont and Novembre died as a result of drowning.

NJTA owns, operates, and maintains the Parkway and is the "successor agency" to the New Jersey Highway Authority (NJHA). In May 1991, NJHA submitted a public contract for roadway and other improvements between Mileposts 129.7 and 137.7. The proposed improvements included roadway resurfacing, pavement widening, and guide rails. NJHA engineers drafted, and NJHA's executive director approved, an "as built drawing" for the roadway improvements. The improvements were completed in accordance with the approved as built plan in July 1995.

Based on NJHA's engineering and design guidelines in effect at the time of the improvements,[2] construction of a "clear zone" was recommended at Milepost 137.3. A clear zone is an unobstructed, traversable roadside area that allows a driver to stop safely or regain control of a vehicle that has left the roadway. The size of a clear zone is determined by the speed limit of the road and the steepness of any slopes adjacent to the road. According to NJTA, based

---

[2] Specifically, the 1989 NJHA Design Manual governed the engineering principles for roadway improvements. For improvements not covered by this manual, the 1984 New Jersey Department of Transportation Roadway Design Manual and the American Association of State Highway and Transportation Officials (AASHTO) Roadside Design Guide applied.

A-0735-23

on the specifications in the applicable engineering guidelines, the clear zone adjacent to Parkway Milepost 137.3 was more than thirty feet wide.

All roadway improvements, including near Milepost 137.3, were marked on the as built drawing. The drawing depicted the roadway, the immediate surrounding area, and the Rahway River.

As for the installation of guide rails, the applicable design guidelines recommended a rail be installed if the clear zone contained trees, utility poles, boulders, deep bodies of water, or slopes greater than three feet in height. Based on the guidelines, when "there is no clear choice as to whether or not [a] guide rail is warranted," "[s]uch cases must be evaluated on an individual basis, and, in the final analysis, must usually be solved by engineering judgment."

The section of the road where Paulemont ran off the road is flat. The speed limit on that portion of the Parkway is fifty-five miles per hour. Based on the configuration of the road, the adjacent surroundings, and the speed limit, NJHA did not request construction of a guide rail at Milepost 137.3. Thus, on the date of the accident, this milepost had no guide rail.

On March 27, 2019, and June 10, 2019, Joseph, Paulemont's husband, and Ferdinand, Novembre's granddaughter, respectively filed separate wrongful death suits against defendants NJTA, State of New Jersey, County of Union,

A-0735-23

Township of Clark, City of Rahway, and Winfield Park.[3]  The two lawsuits were consolidated in a February 14, 2020 order.  In their complaints, plaintiffs alleged NJTA negligently failed to maintain the clear zone, the roadway area at the accident location created dangerous conditions, and a guide rail should have been installed to prevent accidents such as the one involving Paulemont and Novembre.

NJTA retained an engineering expert.  NJTA's expert concluded: "The roadway area where this accident occurred had a clear zone that was adequate and did not warrant modifications or improvements such as the addition of guide rails and as such, allegations that this area was unsafe or dangerous, are unfounded and are not based upon a sound engineering analysis."

Plaintiffs also retained an engineering expert.  Their expert concluded there were dangerous conditions in the area of Milepost 137.3 which proximately caused the accident.  Plaintiffs' expert opined NJTA failed to properly maintain the clear zone, creating a dangerous condition.  Additionally, plaintiffs' expert asserted that if a guide rail had been installed, it would have prevented Paulemont's car from leaving the roadway, striking a nearby tree, and

---

[3]  Plaintiffs' claims against all defendants except NJTA were dismissed. Ferdinand's complaint did not include claims against Winfield Park.

being submerged in the river, ultimately causing the deaths of Paulemont and Novembre.

NJTA moved for summary judgment, arguing plan or design immunity under N.J.S.A. 59:4-6 barred plaintiffs' claims. Specifically, NJTA asserted NJHA built the clear zone at Milepost 137.3 according to an officially approved plan. NJTA also claimed it could not be held liable for considering but deciding against the installation of a guide rail at this specific milepost. Further, because plan immunity is forever, NJTA asserted any other dangerous conditions alleged by plaintiffs did not impose liability either.

In an August 29, 2023 order and attached statement of reasons, the judge granted NJTA's motion and dismissed plaintiffs' complaints with prejudice. The judge agreed plan or design immunity barred plaintiffs' claims against NJTA. She concluded "the subject [c]lear [z]one where [the] vehicle left the roadway exceed the minimum suggested [c]lear [z]one distance of [thirty] feet and [NJHA]'s design engineers took in account all of the sloping principles outlined in the 1984 Manual for Design Criteria when constructing the [c]lear [z]one." Additionally, the judge stated "[t]he plans approved by [NJHA] did consider the presence of the Rahway River" because the river appeared on the as built drawing for the roadway improvements. The judge determined "[i]t [was]

7

uncontroverted that [NJHA]'s designers followed the engineering guidelines and principles that were [in] place when the [c]lear [z]one was constructed."

Regarding plaintiffs' claim that NJTA negligently maintained the clear zone, the judge wrote "[t]he affirmative defense of design and plan immunity is not lost because of a subsequent change in circumstances to the [c]lear [z]one such as erosion or overgrown shrubbery. . . . Design and plan immunity is a perpetual immunity. . . ." After considering the facts in the light most favorable to plaintiffs, the judge found "no genuine issue of material fact that [NJTA] has proven [it was] entitled to the design and plan immunity pursuant to N.J.S.A. 59:4-6." Thus, the judge declined to conduct an analysis of plaintiffs' negligent maintenance claim under N.J.S.A. 59:4-1 and N.J.S.A. 59:4-2.

Plaintiffs moved for reconsideration, which the motion judge denied. In an October 6, 2023 order and attached statement of reasons, the judge explained she determined plan or design immunity precluded plaintiffs' negligent maintenance claim. The judge concluded "maintenance [was] irrelevant because design immunity is perpetual and absolute." The judge noted plaintiffs failed to provide "any authority to support the repeated assertion that 'design immunity does not lead to total immunity' and that 'negligent maintenance is not covered by design immunity at all.'"

On appeal, plaintiffs argue the motion judge erred in granting summary judgment because (1) NJTA was not entitled to plan or design immunity, (2) plan or design immunity did not apply to NJTA's failure to maintain trees, wetland vegetation, or steep slopes within the clear zone, and (3) NJTA's failure to maintain these conditions within the clear zone presented a genuine issue of material fact precluding summary judgment.

A trial judge's decision on summary judgment motion is reviewed de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "[A]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (quoting R. 4:46-2(c)).

"The court's function is not 'to weigh the evidence and determine the truth of the matter . . . .'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting

9

Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).  We must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305 (2023) (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)).  If the evidence is "so one-sided that one party must prevail as a matter of law," summary judgment is appropriate.  Brill, 142 N.J. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

I.

We first address plaintiffs' argument that NJTA was not entitled to summary judgment based on plan or design immunity for the roadway improvements and, more specifically, the decision not to install a guide rail at Milepost 137.3.  We reject plaintiffs' argument on this point.

10

The Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, governs public entity liability in New Jersey. "The guiding principle of the Tort Claims Act is that 'immunity from tort liability is the general rule and liability is the exception . . . .'" Coyne v. State, Dep't of Transp., 182 N.J. 481, 488 (2005) (quoting Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998)). This is because "a coordinate branch of government should not be second-guessed by the judiciary for high level policy decisions." Thompson v. Newark Hous. Auth., 108 N.J. 525, 534 (1987).

Plan or design immunity under N.J.S.A. 59:4-6 is an affirmative defense for which "the public entity bears . . . the burden of proof." Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes, 90 N.J. 582, 600 (1982). N.J.S.A. 59:4-6 provides:

> Neither [a] public entity nor a public employee is liable . . . for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity . . . .

Where plan or design immunity attaches, "no subsequent event or change of conditions shall render a public entity liable on the theory that the existing plan or design of public property constitutes a dangerous condition." Seals v.

A-0735-23

Cnty. of Morris, 210 N.J. 157, 180 (2012). This "immunity is not lost even if new knowledge demonstrates the dangerousness of the design, or the design presents a dangerous condition in light of a new context." Manna v. State, 129 N.J. 341, 355 (1992). In other words, plan or design immunity is "perpetual." Ibid.

"Application of plan-or-design immunity turns on whether the public entity has approved the feature in question so as to immunize it from challenge." Id. at 353. "[T]he defect that causes the injury must be in the plans before immunity is conferred." Thompson, 108 N.J. at 535. Thus, "for 'plan or design' immunity to attach, the public entity must establish that an approved feature of the plan sufficiently addressed the condition that is causally related to the accident." Id. at 536. A public entity is not required to show "a feature of the plans . . . was specifically considered and rejected." Id. at 537. Rather, "[i]f the plans sufficiently embrace the condition that is the subject matter of plaintiff's claim, they should be given pre-emptive effect." Ibid. A public entity need only "offer evidence that it had considered the general condition about which a plaintiff complains in formulating the original plan or design." Luczak v. Twp. of Evesham, 311 N.J. Super. 103, 109 (App. Div. 1998).

The absence of a guide rail at Milepost 137.3 was noted in NJHA's as built drawing for the road improvements. NJHA affirmatively considered and installed guide rails at other milepost locations consistent with the applicable engineering and design guidelines. The decision not to install a guide rail at Milepost 137.3 included NJHA's consideration of steep slopes, bodies of water more than two feet in depth, and existing trees. The approved as built drawing for the roadway improvements also included consideration of the Rahway River.

The record reflected NJHA considered the conditions near Milepost 137.3, including the Rahway River. However, in accordance with the applicable engineering guidelines, NJHA elected not to install a guide rail at this location. Notably, NJHA installed guide rails at other mileposts as reflected on the as built plans. Thus, the motion judge correctly concluded NJTA could not be liable for the absence of a guide rail at the scene of the accident based on plan or design immunity under N.J.S.A. 59:4-6.

II.

We next address plaintiffs' argument the motion judge erred by combining plan or design immunity under N.J.S.A 59:4-6 with negligent failure to maintain the clear zone under N.J.S.A. 59:4-1 and N.J.S.A. 59:4-2. While we agree plan

13

or design immunity attached to the lack of a guide rail, such immunity does not govern plaintiffs' claim for negligent failure to maintain the clear zone.

"[A] public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cnty. of Essex, 209 N.J. 51, 65 (2012) ("Polzo II") (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)). N.J.S.A. 59:4-2 imposes liability against public entities for failing to remedy dangerous property conditions. The statute provides:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to

protect against the condition or the failure to take such action was not palpably unreasonable.

[Ibid.]

To prevail on a claim for negligent maintenance of public property, a plaintiff must establish (1) the existence of a "dangerous condition," (2) the condition "proximately caused the injury," (3) the condition "created a reasonably foreseeable risk of the kind of injury which was incurred," (4) the dangerous condition was caused by a negligent employee or the entity had actual or constructive notice of the dangerous condition, and (5) the entity's conduct was "palpably unreasonable." Vincitore ex rel. Est. of Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001). A plaintiff asserting a tort claim against a public entity for injuries allegedly caused by a condition on its property must present evidence satisfying each element to support a cause of action under N.J.S.A. 59:4-2. Polzo II, 209 N.J. at 66.

"Whether property is in a 'dangerous condition' is generally a question for the finder of fact." Vincitore, 169 N.J. at 123. Such a finding, "like any other fact question before a jury, is subject to the court's assessment whether it can reasonably be made under the evidence presented." Black v. Borough of Atlantic Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993). "When deciding a motion . . . for summary judgment in a case where the plaintiff has alleged a

15

dangerous condition of a roadway, the judge must examine the issue 'pragmatically' to determine whether the particular irregularities complained of 'were such that reasonable minds could differ as to whether they manifested that the [roadway] was in a dangerous condition.'" Est. of Massi v. Barr, 479 N.J. Super. 144, 158 (App. Div. 2024) (quoting Polyard v. Terry, 160 N.J. Super. 497, 510 (App. Div. 1978)).

If a dangerous condition is found to exist, the judge must engage in a two-part analysis to determine whether a plaintiff alleging an injury based on a purported dangerous condition exercised due care under N.J.S.A. 59:4-1(a). Garrison, 154 N.J. at 292. This analysis requires a judge to identify (1) "whether the property poses a danger to the general public when used in [a] normal, foreseeable manner," and (2) "whether the nature of the . . . activity is 'so objectively unreasonable' that the condition of the property cannot reasonably be said to have caused the injury." Buddy v. Knapp, 469 N.J. Super. 168, 198 (App. Div. 2021) (quoting Vincitore, 169 N.J. at 125).

Here, the judge did not conduct the required analysis to determine whether NJTA's alleged negligent failure to maintain the clear zone constituted a dangerous condition. The judge had to determine whether, based on the undisputed facts, the condition of the area adjacent to Milepost 137.3 created a

16                                                                    A-0735-23

substantial risk of injury when the property was used with due care. Plaintiffs allege the slopes adjacent to Milepost 137.3 were non-recoverable, the wetland vegetation significantly expanded, and trees and brush sprouted in the clear zone such that NJTA's failure to mitigate these conditions through routine maintenance created a dangerous condition imposing liability under N.J.S.A. 59:4-2.

The causes of action for failure to install a guide rail and negligent failure to maintain the clear zone are governed by two different statutes. The installation of the guide rail is governed by N.J.S.A. 59:4-6. However, plaintiffs' claims asserting a dangerous condition based on NJTA's failure to maintain the clear zone required an analysis under N.J.S.A. 59:4-1 and N.J.S.A. 59:4-2. In the absence of the required analysis under these statutes, we are constrained to remand to the motion judge to address whether NJTA is entitled to summary judgment on plaintiffs' claim that NJTA's failure to maintain the clear zone constituted a dangerous condition.

We need not address whether plaintiffs' expert's opinions regarding the negligent failure to maintain the area adjacent to Milepost 137.3 are factually supported by the record because the issue was not presented to the motion judge. We take no position on the outcome of NJTA's motion on remand.

Affirmed in part and reversed and remanded in part for proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0735-23